UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NANCY WILLIAMS,

               Plaintiff,

      v.

MICROSOFT CORPORATION,

               Defendant.

CASE NO. C15-0091JLR

ORDER

## I. INTRODUCTION

Before the court is Plaintiff Nancy Williams's motion to remand this action to state court for lack of subject matter jurisdiction.  (Mot. (Dkt. # 8).)  The court has reviewed the motion together with all documents filed in support and in opposition, as well as the balance of the record.  Being fully advised,[1] the court GRANTS the motion.

//

---

[1] The court finds that oral argument is unnecessary.  *See* Local Rules W.D. Wash. LCR (7)(b)(4).

ORDER- 1

## II. BACKGROUND

Plaintiff Nancy Williams is a resident of Washington State.  (Answer (Dkt. #6) ¶ 1.1.)  Defendant Microsoft Corporation ("Microsoft") is a corporation organized under the laws of Washington State with its headquarters in Redmond, Washington.  (*See id.* ¶ 1.3.)  Ms. Williams filed suit against Microsoft, her former employer, in August 2014 in King County Superior Court in the State of Washington.  (*See* Mot. at 1; Not. of Rem. (Dkt. # 1) at 1.)  She alleges claims of discrimination under the Washington Law Against Discrimination, RCW ch. 49.60, and the Washington Wage Claim Statute, RCW ch. 49.48 and RCW ch. 49.52, as well as state common law claims of negligent hiring, negligent supervision, and wrongful constructive discharge in violation of public policy. (*See generally* Ver. of State Ct. Rec. (Dkt. # 2) Ex. 1 at 2-22 ("Am. Compl.").)  Ms. Williams insists that she has not asserted any claims under federal law.  (Mot. at 2.)  In September 2014, the state court judge ordered Ms. Williams to file a more particular statement of her claim for public policy wrongful discharge under Washington Civil Rule 12(e).  (*See* Ver. of State Ct. Rec. Ex. 4 at 39.)  Ms. Williams filed such a statement on December 29, 2014. (Praecipe to Not. of Rem. (Dkt. # 4) Ex. B ("More Particular Statement").)

In her more particular statement, Ms. Williams articulated that she bases her claim of wrongful constructive discharge in violation of public policy in part on allegations that she suffered mistreatment for questioning what she saw as Microsoft's disregard for, and violation of, federal immigration laws.  (*Id.* ¶ 9.4.)  In particular, Ms. Williams  asserts that federal immigration "statutes and regulations obligate the employer to accurately and

truthfully make representations in connection with the visa process." (*Id.*)  She describes her claim as follows:

> [Ms. Williams's] supervisors and managers took actions that are contrary to the provisions of the federal immigration laws and regulations and which violate the public policies therein embodied.  [Her] actions in questioning them and asserting the obligation to comply with the laws, reporting the wrongful actions and refusing to violate the law, regulations or public policy, resulted in retaliation against her including an unfair negative performance review, hostile work environment, removal from the hiring process, verbal threats and threats of physical assault and ultimately constructive discharge.

(*Id.*)  Additional bases for the claim include allegations that Microsoft's conduct violated the public policies set forth in the Washington Business Corporations Act, RCW 23B.03.020 (*id.* ¶¶ 9.5-9.6), Washington common law (*id.* ¶ 9.7), and the Microsoft Code of Business Conduct (*id.* ¶¶ 9.2-9.3).

After receiving a copy of the more particular statement, Microsoft removed the case to this court, arguing that Ms. Williams's invocation of federal immigration laws in her claim for the state-law tort of wrongful constructive discharge in violation of public policy raises a substantial question of federal law.  (*See* Not. of Rem.)  Microsoft contends that this court, rather than the King County Superior Court, is the correct forum to hear and adjudicate Ms. Williams's claims.  Ms. Williams disagrees and has moved for remand.  (*See* Mot.)

## III. ANALYSIS

Absent diversity of citizenship, federal question jurisdiction is generally required to establish this court's subject matter jurisdiction.  *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  This court has original federal question jurisdiction over "civil

1    actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C.

2    § 1331.  Most often, "a case arises under federal law when federal law creates the cause

3    of action asserted."  *Gunn v. Minton*, --- U.S. ---, 133 S. Ct. 1059, 1065 (2013).  Even

4    when the complaint fails to allege a federal cause of action directly, however, sometimes

5    "federal-question jurisdiction will lie over state-law claims that implicate significant

6    federal issues."  *Grable & Sons Metal Prods. Co. v. Darue Eng'g & Mfg.*, 545 U.S. 308,

7    312 (2005).

8            The Supreme Court has explained that in such instances "federal jurisdiction over

9    a state-law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed,

10   (3) substantial, and (4) capable of resolution in federal court without disrupting the

11   federal-state balance approved by Congress."  *Gunn*, 133 S. Ct. at 1065.  A case fits

12   within this "special and small category," *id.* at 1064 (quoting *Empire Healthchoice*

13   *Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)), only if "all four of these elements

14   are met," *id.* at 1065.

15           "Only state-court actions that originally could have been filed in federal court may

16   be removed to federal court by the defendant."  *Williams*, 482 U.S. at 392 (citing 28

17   U.S.C. § 1441).  Courts in the Ninth Circuit "strictly construe the removal statute against

18   removal jurisdiction."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing

19   *Boggs v. Lewis,* 863 F.2d 662, 663 (9th Cir. 1988)).  Accordingly, courts must

20   "presume[] that a cause lies outside the limited jurisdiction of the federal courts and the

21   burden of establishing the contrary rests upon the party asserting jurisdiction."  *Abrego*

22   *Abrego v. The Dow Chem. Co.,* 443 F.3d 676, 684 (9th Cir. 2006) (internal punctuation

ORDER- 4

1    omitted) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

2    In other words, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right

3    of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)

4    (citing *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir. 1979)); *see also*

5    28 U.S.C. 1447(c) ("If . . . it appears that the district court lacks subject matter

6    jurisdiction, the case shall be remanded.").  Because Microsoft has not succeeded in

7    demonstrating that the references to federal immigration law in Ms. Williams's wrongful

8    constructive discharge claim satisfy all four requirements outlined by the Supreme Court

9    in *Gunn*, 133 S. Ct. 1059, this court concludes that it lacks jurisdiction to adjudicate this

10   case.[2]

11        To begin, Microsoft has failed to persuade the court that interpretation of federal

12   immigration law is "necessarily raised" in Ms. Williams's state-law claim for wrongful

13   constructive discharge.  *Gunn* 133 S. Ct. at 1065.  As the Ninth Circuit has explained,

14   "[w]hen a [state-law] claim can be supported by alternative and independent theories—

15   one of which is a state law theory and one of which is a federal law theory—federal

16   question jurisdiction does not attach because federal law is not a necessary element of the

17   claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996); *Glanton v.*

18   *Harrah's Entmn't, Inc.*, 297 F. App'x 685, 687 (9th Cir. 2008) (citing *Rains*, 80 F.3d at

19

20        [2] Ms. Williams also argues that jurisdiction is improper because removal was untimely,
21   Microsoft waived the issue of removal, and removal is contrary to the interests of comity and
     judicial economy.  (Mot. at 4.)  Because the court finds that it lacks subject matter jurisdiction
22   over this dispute, Ms. Williams's alternative grounds for remand are moot, and therefore the
     court does not address them.

345) (holding that an action for wrongful discharge in violation of public policy under Nevada law did not present a substantial federal question despite plaintiff's invocation of "EPA, OSHA and federal statutes and regulations" (internal quotation marks omitted)).

Under Washington law, a claim for wrongful discharge in violation of public policy arises when an employer discharges an employee for reasons that contravene a clear mandate of public policy. *See Danny v. Laidlaw Transit Servs., Inc.*, 193 P.3d 128, 131 (Wash. 2008). To prevail, a plaintiff must prove:

> (1) the existence of a clear public policy (the *clarity* element); (2) that discouraging the conduct in which [the plaintiff] engaged would jeopardize the public policy (the *jeopardy* element); (3) that the public-policy-linked conduct caused the dismissal (the *causation* element); and (4) [the defendant] must not be able to offer an overriding justification for the dismissal (the *absence of justification* element).

*Id.* (emphasis in original). The Washington State Supreme Court has acknowledged that both state and federal laws may establish public policy for purposes of this tort. *See, e.g.*, *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1090 (Wash. 1984) (recognizing the tort and finding a "clear expression of public policy" in the federal Foreign Corrupt Practices Act of 1977, 15 U.S.C. § 78dd).

Ms. Williams does base her claim of wrongful constructive discharge in part on Microsoft's response to her objections about perceived violations of federal immigration law (s*ee* More Particular Statement ¶ 9.4), but she stresses that the link between her claims and immigration law is "ancillary" (Reply (Dkt. #13) at 2). The pertinent question, she argues, is "whether terminating employees who object to filling out paperwork which misleads the government harms the public interest." (*Id.*) The policy

ORDER- 6

1   that she claims Microsoft violated "is not unique to immigration law.  One could

2   substitute scores of state and federal schemes to demonstrate the existence of such a

3   policy."  (*Id.*)  Other sources she points to include the Washington Business Corporations

4   Act, RCW 23B.03.020 (More Particular Statement ¶¶ 9.5-9.6), Washington common law

5   (*id.* ¶ 9.7), and the Microsoft Code of Business Conduct (*id.* ¶¶ 9.2-9.3).  Because she

6   presents alternative and independent theories to support her claim for public policy

7   wrongful discharge, *Rains*, 80 F. 3d at 346, the federal law questions are not "necessarily

8   raised," *Gunn*, 133 S. Ct. at 1065.

9        Likewise, Microsoft has not established that the federal issues in this case are

10   "substantial in the relevant sense."[3]  *Gunn*, 133 S. Ct. at 1066 (noting that "the

11   substantiality inquiry" focuses on "the importance of the issue to the federal system as a

12   whole").  In *Gunn*, the Supreme Court rejected the argument that a claim of legal

13   malpractice under Texas law presented a substantial federal question where the

14   challenged attorney conduct occurred in the context of a federal patent dispute.  *See id.* at

15   1062-65.  The Supreme Court recognized that adjudication of actual patent cases is

16   strictly within the purview of the federal courts.  *Id.* at 1067 (citing 28 U.S.C. §§ 1338(a),

17   1295(a)(1)).  But the Court reasoned that, for purposes of a legal malpractice claim, the

18   patent law "question is posed in a merely hypothetical sense . . . . No matter how the state

19   courts resolve that hypothetical 'case within a case,' it [would] not change the result of

20

21        [3] The court assumes without deciding that the issues in this case related to federal
22   immigration law are "actually disputed."  *Gunn*, 133 S. Ct. at 1065-66 (internal quotation marks
     omitted).

1    the prior federal patent litigation." *Id.* Moreover, when "resolving the nonhypothetical

2    patent questions [federal] cases present, the federal courts are of course not bound by

3    state court case-within-a-case patent rulings." *Id.*

4        A similar scenario exists in this case. The court recognizes that immigration law,

5    like patent law, is a uniquely federal subject. *See Arizona v. United States*, --- U.S. ---,

6    132 S. Ct. 2492, 2510 (2012). Yet even if a Washington court evaluates the immigration

7    laws that Ms. Williams cites in her more particular statement, the state court's treatment

8    of those laws will neither affect prior immigration proceedings nor be binding in future

9    immigration proceedings. *See Gunn*, 133 S. Ct. at 1067. In fact, this case is even farther

10    from presenting a substantial federal question than the malpractice litigation in *Gunn*.

11    There, the state trial court was required to opine on the applicability of a federal law to a

12    particular factual scenario. *See id.* The decision in that hypothetical patent case might,

13    therefore, have at least persuasive value in a federal patent case with similar facts. Here,

14    by contrast, the state court's decision will concern only the *policies* embodied in federal

15    immigration law. *See Danny*, 193 P.3d at 131. There is no hypothetical immigration

16    case within this case, no need to apply any particular provision of immigration law to a

17    set of facts, and thus even less possibility of influencing actual immigration litigation.

18        Finally, even if federal law issues were necessarily raised in this case and

19    substantial, Ms. Williams's claim "would still fundamentally belong in state court."

20    *Cross v. King Cnty*, No. C08-0944JLR, 2009 WL 2475444, at *6 (W.D. Wash. Aug. 11,

21    2009). There is no doubt that "[i]t is state, not federal, law that creates the cause of

22

action for wrongful discharge in violation of public policy." *Rains*, 80 F.3d at 343.  As

this court has previously explained:

> Wrongful discharge claims can be grounded on any number of
> Constitutional issues, statutes, or regulations contained in the vast body of
> federal law.  Federal district courts should not be tasked with disentangling,
> on a case-by-case basis, which federal policies convert a state-law wrongful
> discharge claim into a federal cause of action, and which federal policies do
> not.

*Cross*, 2009 WL 2475444, at *6.  Moreover, "Congress has specifically delineated the

areas of employment law that may be redressed in federal court." *Id.*  Thus, even though

Ms. Williams's state-law claims reference federal law, this court cannot exercise

jurisdiction over this action without "disturbing [the] congressionally approved balance

of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

In sum, "[t]his case cannot be squeezed into the slim category" of cases where

federal question jurisdiction exists on the basis of state-law claims that implicate

significant federal issues. *Empire Healthchoice*, 547 U.S. at 701; *see Gunn*, 133 S. Ct. at

1064-67; *Grable*, 545 U.S. at 312.  Although Ms. Williams references federal

immigration law in her state-law wrongful discharge claim, those references are

insufficient to create a federal question.  The federal issues in this case are not necessarily

raised, substantial, or capable of resolution in federal court without disrupting the federal-

state balance approved by Congress. *See Gunn*, 133 S. Ct. at 1065.  Furthermore,

diversity jurisdiction is also absent because both Ms. Williams and Microsoft are citizens

of Washington State. (*See* Answer ¶¶ 1.1, 1.3); 28 U.S.C. § 1332.  The court therefore

1   lacks subject matter jurisdiction over this action and must remand the case to state court.

2   *See Williams*, 482 U.S. at 392; 28 U.S.C. § 1447(c); *Gaus*, 980 F.2d at 566.

3 **IV. CONCLUSION**

4       For foregoing reasons, the court concludes that it lacks subject matter jurisdiction

5   over this action and therefore ORDERS as follows:

6         1. Pursuant to 28 U.S.C. §§ 1447(c) and 1447(d), all further proceedings in

7            this case are REMANDED to the Superior Court for King County in the

8            State of Washington,

9         2. The Clerk of the Court shall send copies of this order to all counsel of

10           record for all parties,

11         3. Pursuant to 28 U.S.C. § 1447(c), the Clerk of the Court shall mail a

12           certified copy of the order of remand to the Clerk of the Court for the

13           Superior Court for King County, Washington,

14         4. The Clerk of the Court shall also transmit the record herein to the Clerk of

15           the Court for the Superior Court for King County, Washington,

16         5. The parties shall file nothing further in this matter, and instead are

17           instructed to seek any further relief to which they believe they are entitled

18           from the courts of the State of Washington, as may be appropriate in due

19           course, and

20   //

21   //

22   //

6.   The Clerk of the Court shall CLOSE this case.

Dated this 7th day of April, 2015.

JAMES L. ROBART
United States District Judge

ORDER- 11